LIPSCOMB NORVELL V. JAMES PHILLIPS ET AL.

1. PAROL EVIDENCE OF CONFLICT OF GRANTS.—Upon an issue of inadequacy of price for which land was sold, it is admissible to prove, by parol evidence, that the land conflicted, or was supposed to be in conflict, with an elder grant, and also to show the supposed merits of the conflicting titles, as affecting the value of the land in general esteem, or with those who might wish to purchase.

2. SAME.—Though the existence and extent of the conflict of two grants can only be definitely determined, in many instances, by a survey, there is no reason why it may not be proved by any one who can testify to the fact.

3. OBJECTIONS TO TESTIMONY.—When, by the bill of exceptions, it is not shown that the testimony was, under no circumstances, admissible, the court will suppose that the court below would have made the proper ruling, had the objection been insisted on to the testimony, so far as it seems objectionable.

4. CHARGES OF COURT—ASSIGNMENT OF ERROR.—When no specific error is assigned to the charge of the court, and there is no error of a controlling nature manifest, this court will not critically examine the charge to ascertain if it is in every respect accurate.

5. SAME.—A charge not applicable to the facts in evidence is properly refused, however correct as a principle it may be.

6. ASSIGNMENT OF ERRORS.—When there is a conflict of testimony, the general assignment, that the verdict is against the law and the evidence, is too general, and will not be considered.

7. INTERVENTION.—It can be no ground of complaint that necessary parties to a suit are allowed to make themselves parties, as intervenors, at their own instance.

8. IRREGULARITIES.—When a judgment is not warranted by the pleadings, but is of such a nature that it cannot affect the party complaining, it will be considered a mere irregularity, and no cause for reversal.

9. PRACTICE.—The fact that the relief granted has not been exhaustive, but further action was not asked by either party, is not ground of reversal.

APPEAL from Sabine. Tried below before the Hon. George Lane.

On the 25th day of May, 1869, the plaintiff in this suit, James Horton, contracted with the defendant, Lipscomb Norvell, for the purchase of one thousand acres of land, a part of the headright league of the said Lipscomb Norvell, which was located in the county of Limestone, near Tehuacana Springs. By the terms of the contract, plaintiff was to pay Norvell the sum of one thousand dollars in gold or silver by or before the 1st day of January, 1870, with ten per cent. per annum interest from the day of payment, and executed his note therefor, dated the 25th day of May, 1869, and payable the 1st day of January, 1870. When the said sum of money should be paid, the defendant Norvell was to execute and deliver a conveyance for the land pur-

chased, to the plaintiff, with a general warranty of title to the same, and he executed and delivered · to plaintiff, a title bond, bearing date the 25th day of May, 1869, in which the said contract was set forth.

On the 4th day of February, 1870, James Phillips, one of the intervenors in this cause, for himself and the other intervenor, James Atkisson, contracted with the defendant Norvell for the purchase of one thousand acres of land of the defendant's headright, situated in the said county of Limestone, being the same one thousand acres of land which the defendant, on the 25th day of May, 1869, contracted to convey to the plaintiff, James Horton. At the time of the contract for the purchase of the one thousand acres of land by the intervenors, James Phillips executed and delivered to the defendants a draft on George F. Alford & Veal, of Galveston, for one thousand dollars in gold, for the purchase-money of the one thousand acres of land, signing the name of James Atkisson only to the draft, and representing that he had authority to do so. On the same day, James Phillips, for himself and James Atkisson, entered into a contract with the defendant, Lipscomb Norvell, to purchase from him all that portion of his headright league of land situated in Limestone county in conflict with any eleven-league claim, the amount and extent of such conflict to be determined by actual survey as soon as practicable, and executed and delivered to the defendant the written obligation of himself and the said James Atkisson to pay to the defendant the sum of one dollar in gold per acre for all the land in such conflict.

At the time of the execution and delivery of the draft and written obligation before mentioned, the defendant, Lipscomb Norvell, agreed with James Phillips to have written at Jasper a deed from him to the said James Phillips and James Atkisson for the one thousand acres of land, with a general warranty of title thereto, and a quit-claim deed to so much of his said headright league as might be in conflict

with any eleven-league claim, and forward the same to the Phillips, at Palestine.

On the 11th day of February, 1870, a deed of conveyance from the defendant to the intervenors, James Phillips and James Atkisson, with general warranty of title to the one thousand acres of land, and a quit-claim for so much of the defendant's headright league of land as might be in conflict with any eleven league claim, included in one instrument, was written at Jasper and signed and acknowledged by the defendant. But the payment of the draft before referred to, having been countermanded by the intervenor James Atkisson, and the payment of it actually refused, the deed was held by the defendant until the 8th day of August, 1870, when the intervenor, James Phillips, visited the defendant at his home in Sabine county, and after satisfying the defendant that he intended to act fairly in the matter, paid him one thousand dollars in gold as the purchase-money for the one thousand acres of land, and prevailed on the defendant to deliver him the deed.

On the 5th day of August, 1870, the plaintiff, James Horton, commenced a suit against the defendant, Lipscomb Norvell, to enforce a specific performance of the contract made by the defendant with him on the 25th day of May, 1869, to convey to him the one thousand acres of land before referred to.

The defendant answered the plaintiff's petition by a general denial, and pleaded specially that at the time of the execution of the said title bond to plaintiff by defendant it was understood and agreed, by and between him and the plaintiff, that time was of the essence of the contract, and that if the purchase-money for the land was not punctually paid on the 1st day of January, 1870, the time stipulated in the bond, the contract for the sale of the land should thereby become null and void; and that plaintiff failed to pay any part of the purchase-money by or before the 1st day of January, 1870.

On the 5th day of August, 1872, the defendant amended his answer to the plaintiff's petition, and alleged that on the 1st day of December, 1869, the plaintiff applied to him for an extension of time within which to make payment of his note given to the defendant for the purchase-money of the one thousand acres of land; that defendant consented and agreed that plaintiff should have until the 15th day of January, 1870, within which to make payment of the note, and not beyond that time; and notified the plaintiff .that he must make payment by that time, and that if he failed to do so, the contract should be at an end, and he would sell again, if he had an opportunity; to all of which the plaintiff then and there agreed.

The defendant also alleged that at the time he contracted with plaintiff to convey to him the one thousand acres of land, it was of the value of five dollars in gold per acre, which fact was well known to the plaintiff, but of which defendant was entirely ignorant, and that the plaintiff induced him to agree to sell to plaintiff the land at the grossly inadequate price of one dollar per acre, by fraud, and by falsely and fraudulently representing to defendant that the land was of the value of but one dollar in gold per acre, and by fraudulently suppressing the true value thereof.

On the 11th day of August, 1871, James Atkisson and James Phillips filed their plea of intervention, and alleged that on the 11th day of February, 1870, they purchased of the defendant the one thousand acres of land in controversy between the plaintiff and the defendant, and that on the same day defendant executed and delivered to them a conveyance for the said land, with general warranty of title, and that they then and there paid the defendant one thousand dollars in gold as the purchase-money of said one thousand acres of land. That on the 4th day of February, 1870, they entered into a contract with the defendant to purchase from him all that portion of his headright league of land which might be in conflict, with any eleven-league claim, the amount and extent

of the conflict to be determined by actual survey as soon as practicable, and executed and delivered to defendant their written obligation to pay to him the sum of one dollar in gold per acre for all the land which might be included in said conflict, as soon as the extent of said conflict could be determined by survey, and the amount of money to be paid could thereby be ascertained ; and that on the 11th day of February, 1870, the defendant executed and delivered to them his quit-claim deed for all of the land included in such conflict, and the quit-claim deed being a part of the deed to the one thousand acres of land. They averred their willingness to comply with their contract to pay the defendant the sum of one dollar in gold per acre for all the land included in the conflict before referred to ; that the same had not been paid, from the fact that the survey stipulated to be made in the deed had not been made, and that the survey had not been made solely on account of the defendant's disposition to delay the same ; and they offered to pay the amount of money due from them for the land so soon as the survey could be made and the proper amount ascertained.

They also alleged that they purchased the one thousand acres of land of the defendant long after the plaintiff Horton had forfeited and abandoned his contract with the defendant, and long after the contract in regard to the sale of said land between the plaintiff and defendant had been abandoned and treated as abandoned by the plaintiff and defendant, and that they purchased the land of the defendant in good faith and without any notice of any claim on the part of the plaintiff to any part of it.

They prayed for a decree dismissing the petition of the plaintiff as to all claim in regard to any of the land, and declaring the title to the one thousand acres of land to be in them, as evidenced by the deed of the defendant, and enforcing the contract for the purchase by them of the defendant of all that portion of his headright league of land which

might be in conflict with any eleven-league claim, and for general relief.

The defendant filed his answer to the plea of intervention filed by James Atkisson and James Phillips, in which he denied all the allegations in the plea of intervention, and alleged that the sales of the lands in the plea of intervention set forth were by the intervenors induced and procured to be made to them by defendant by fraud, and that the deeds of conveyance of the lands mentioned in the plea of intervention were by the intervenors obtained and procured to be executed and delivered to them by defendant by fraud; that the sales and conveyances did not take place at the times indicated by the dates of the instruments as set forth in the plea of intervention, but that the sales were made and the conveyances executed and delivered on the 8th day of August, 1870. He offered to refund to the intervenors one thousand dollars in gold, paid him by the intervenor James Phillips on the 8th day of August, 1870, with legal interest thereon from that date; to surrender for cancellation the written obligation of the intervenors, dated the 4th day of February, 1870, in which they bound themselves to pay him one dollar in gold per acre for all of his headright in conflict with an eleven-league grant; and prayed that the sales to the intervenors might be annulled and set aside, and that the deeds might be canceled and adjudged to be void, and for costs, and for general relief.

The intervenors, by an amendment of their plea of intervention, replied to the defendant's answer to their plea of intervention, by denying all the allegation in the answer, and prayed to be permitted to rebut by proof the allegations of fraud in the answer; that their deed to the one thousand acres of land sued for by plaintiff be recognized as a valid title thereto; for the relief prayed for in their original plea of intervention, and for general relief.

On the 5th day of August, 1872, the defendant amended his answer to the plea of intervention, and alleged fraud on

the part of the intervenors, as in his original answer to their plea, setting forth additional facts and circumstances constituting the same, and prayed as in his original answer, and that he might be permitted to withhold so much of the one thousand dollars paid him by the intervenors on the 8th day of August, 1870, as would be sufficient to reimburse him the costs by him expended in his defense against the plea of intervention, and for general relief.

On the 8th day of December, 1874, the defendant again amended his answer to the plea of intervention, and alleged that by means of the fraud and the false and fraudulent representations, suppressions of the truth, overreaching artifices, devices, importunities, and undue influence practiced by the intervenors, whereby they procured the sales and conveyances of and from defendant mentioned in the plea of intervention, as set forth in the defendant's previous answer and amended answer to the plea of intervention, he had been damaged in the sum of fifteen hundred dollars; and that by reason of said fraud practiced on him he had been put to great trouble and expense in defending the plea of intervention, and in the proceedings in this cause to rescind and set aside the sales and deeds, and in employing attorneys and obtaining the necessary evidence to resist the plea of intervention and effect the rescission of the sales and deeds, whereby he was damaged fifteen hundred dollars. He prayed judgment against the intervenors for his damages, and for general relief.

The case came to trial at the April Term, 1875. The jury found a verdict for the defendant as against the plaintiff, and for the intervenors as against the defendant and plaintiff.

The court rendered judgment in favor of the defendant against the plaintiff, and in favor of the intervenors against the defendant and the plaintiff, and awarding a writ of possession in favor of intervenors.

With the result of the trial, the plaintiff seems to have

been satisfied.    He made no motion for a new trial, and did
not give notice of appeal.    The defendant made a motion
for a new trial of the issues joined between him and the
intervenors, on various grounds, which motion was overruled
and the defendant appealed.

On the trial, the intervenors exhibited their deed and con-
tract with Norvell as pleaded, offering to pay for that part of
the Norvell league in conflict with other grants, in accordance
with their obligation.

The testimony by defendant, on the issues between inter-
venors and himself, was voluminous.    Many letters passed
between Phillips and defendant.    The testimony showed that
Phillips had managed well in obtaining Norvell's conveyance;
that the land had increased in value greatly from 1869 to
August, 1870, the time the deed was delivered—from twenty-
five to fifty per cent.    The causes of the increase in value
were the establishment of Trinity University, by the Cumber-
land Presbyterian Church, in the neighborhood of the land;
the successful organization of the University; the extension
of the H. and T. C. R. R. through the land, &c.    These facts
were known to Norvell, but their effect on values was not,
and in conversations with him, Phillips questioned their effect.
Witnesses for Norvell fixed the value of the land in 1870 at
from five to ten dollars, gold, per acre.    Witness Henry testi-
fied that, in tracts of one thousand acres, one dollar per acre
was a fair price for the Norvell league, and that it was un-
derstood in the neighborhood that the entire tract could be
bought at that price.

It was shown by parol evidence that the greater part of the
Norvell grant was in conflict with an older eleven-league
grant, which was considered valid.

The errors assigned were—

1, 2, and 3. The admission of parol testimony of the exist-
ence of the eleven-league grant, its conflict with the Norvell
grant, and the general opinion as to the relative merits of the
two titles.

4. Admitting the depositions of J. R. Henry; (that in 1869 the Norvell league, in tracts of one thousand acres, was worth about one dollar per acre, and that it was understood in the neighborhood that, by taking the whole survey, it could be had at one dollar per acre, which he considered a fair price.)

5 and 6. The charge given by the court upon the issues between intervenors and defendant.

7. Refusing the instructions asked by defendant.

8. Overruling the motion for new trial—the verdict being against the law and evidence.

Additional assignment—

1. The judgment in favor of intervenors for the recovery of the 1,000-acres tract claimed by them, and awarding a writ of possession therefor.

2. Giving judgment for intervenors for that part of the Norvell league which might be in conflict with any eleven-league grant, and awarding a writ of possession.

*D. W. Doom & L. Norvell*, for the appellant.—The law requires the highest proof of which the nature of the thing is capable, and oral evidence cannot be substituted for any writing, the existence of which is disputed, and which is material to the issue between the parties, and is not merely the memorandum of some other fact. (1 Phillips's Ev., 417; 1 Greenl. Ev., sec. 88.) The evidence offered by the intervenors, and admitted over the objection of the defendant, showed that there was better evidence, viz: the eleven-league grant itself.

The eleven-league claim, whether dated before or subsequent to the defendant's grant, was *prima facie* invalid, and the very best evidence of its existence and validity which was in the power of the party to produce ought to have been required.

This ruling of the court below was undoubtedly erroneous. The evidence offered by the intervenors did not tend to prove any issue between the parties; did not relate to the one

thousand acres of land in controversy, and was well calculated to mislead the jury.

The controversy between the intervenors and the defendant was not concerning the headright league of land of defendant, but was confined to one thousand acres of land, a part of the defendant's headright.

The transaction shows that it was not thought by the parties that the one thousand acres of land was in conflict with any other claim, and the evidence offered by the intervenors did not tend to prove any reputed conflict between the land in controversy and an eleven-league claim, and was therefore not admissible as affecting the value of the land in controversy, or for any other purpose.

The title of defendant to his headright was evidenced by a written instrument. And although the court erroneously permitted the existence and contents of an eleven-league claim, reputed to be in conflict with the defendant's headright, to be proved by parol evidence, yet the eleven-league claim, if it existed at all, must also have been a written grant. The comparative merits of the two grants was a question involving the legal interpretation and effect of each of them. It was therefore error to allow evidence affecting the comparative merits of the two grants to go to the jury.

The fourth assignment of error is that the court erred in overruling the objections of defendant to the testimony of J. R. Henry.

The value of the land in controversy, in 1869, might be one dollar per acre, and the same land, on the 4th day of February, 1870, or the 8th day of August, 1870, might be worth ten dollars per acre; and the one thousand acres of land in controversy might at any given time be worth ten dollars per acre, while the remainder of the league of land might be worth no more than one dollar per acre. Evidence, therefore, of the value of the land in controversy, in the year 1869, or of the value of the remainder of the league of land

at the time, was not admissible. The effect of such evidence, when admitted, could only be to mislead the jury as to the real issue between the parties—the value of the land in controversy on the 4th day of February, or the 8th day of August, 1870.

The court, after instructing the jury that if they found from the evidence that the defendant executed and delivered the deed to intervenors, mentioned in their petition of intervention, for the consideration therein mentioned, to find for the intervenors against the defendant, unless they found from the evidence that the intervenors obtained said deed for said consideration by falsely representing to the defendant that there was an eleven-league grant that interfered with and took up a large portion of the land in Norvell's league, and that said consideration was grossly inadequate, when in fact there was no such eleven-league grant interfering with said Norvell's league, or that said intervenors, or either of them, misrepresented to said Norvell the value of said land, and misrepresented the circumstances in the vicinity of said land, of a nature calculated to raise the value of said land, and which did raise the value of said land, so as to induce said Norvell to sell said land at less than its value, and that said land was of much greater value than the price the same was obtained for by intervenors, then to find for the defendant against the intervenors,—proceeded to instruct them as follows:

" Unless you find that said representation as to said eleven-league grant was that it was generally said in the vicinity of said Norvell league that said eleven-league grant did interfere with said Norvell grant."

It is clear that the error in the charge complained of, taken in connection with the error complained of by the first assignment of error, did mislead the jury.

When it is evident that the verdict of the jury has been made to turn on an erroneous charge, and the judgment upon the merits is thus founded on error, or when there is

material error apparent which there is reason to believe influenced the verdict of the jury to the prejudice of a party, the judgment will be reversed. (Hollingsworth v. Holshousen, 17 Tex., 47, 48; Earle v. Thomas, 14 Tex., 583; Lee v. Hamilton, 12 Tex., 419.)

It is error to charge the jury upon a supposed state of facts, as to which there is no allegation in the pleadings or evidence before the jury; and where it is not clear that the jury had not been misled by such error, the judgment must be reversed. (Andrews v. Smithwick, 20 Tex., 118; Earle v. Thomas, 14 Tex., 583; Lee v. Hamilton, 12 Tex., 413; Love v. Wyatt, 19 Tex., 315; Dodd v. Arnold, 28 Tex., 101.)

And when the jury may have been misled by an erroneous charge, the judgment will be reversed, although there were other grounds upon which they might have based their verdict. (Ponton v. Ballard, 24 Tex., 621, 622.)

There was not only a failure to instruct the jury as to the legal conclusions that were deducible from the most material portions of the evidence before them, but by the charge it was excluded from their consideration. The error renders the whole of the charge of the court in relation to the question of fraud erroneous. (Chamblee v. Tarbox, 27 Tex., 146, 147.)

The court also erred in the following part of the charge: "And if you further find that the circumstances in the vicinity of said league of land, which increased the value of said land, were of a public character, such as the running of a public railroad, or the erection of a public school or university, then it was not fraudulent for said intervenors, or either of them, to represent that such railroad or school or university had less effect on the value of the land than what they had, or what others thought they had,—then you will find for the intervenors against the defendant, Norvell."

This was in effect telling the jury that it was not fraudulent for the intervenors, in order to induce the defendant to sell his land to them for an inadequate price, to misrepresent the

effect which the running of the Houston and Texas Central Railroad or the erection of Trinity University near the defendant's land had on the value of it. The law is exactly to the contrary.

A man who, by misrepresentation or concealment, has misled another, cannot be heard to say that he might have known the truth by proper inquiry, but must, in order to be able to rely on the defense that he knew the representation to be untrue, be able to establish the fact upon incontestable evidence, and beyond the possibility of a doubt. (Kerr on Fraud and Mistake, 78, 79; Boyce v. Grundy, 3 Pet., 210.)

But the intervenors nowhere in their pleadings alleged that the circumstances which they were charged with misrepresenting were public and notorious, and evidence to show that they were, without such allegations, was not admissible; and although evidence which tended to show that such circumstances were public and notorious may have been admitted without objection, there were no pleadings to authorize its introduction, and it was error to submit to the jury an issue based upon such evidence. (McKinney v. Fort, 10 Tex., 221; Hall v. Jackson, 3 Tex., 309; Keeble v. Black, 4 Tex., 71.)

Aside from the considerations that the charge of the court referred to was not correct as an abstract proposition of law, and that there were no pleadings to authorize it, it was a charge upon a supposed state of facts as to which there was no evidence before the jury.

To charge upon a hypothesis which has no foundation in the evidence, is error, for which the judgment will be reversed, unless it appear that the jury were not misled thereby. (Earle v. Thomas, 14 Tex., 583; McGreal v. Wilson, 9 Tex., 428; Yarborough v. Tate, 14 Tex., 483; Andrews v. Smithwick, 20 Tex., 118; Dodd v. Arnold, 28 Tex., 101.)

Counsel also discussed the action of the court in refusing the charges asked, and the facts as to their sufficiency to sustain the verdict.

*Jones & Henry*, for appellees.

MOORE, ASSOCIATE JUSTICE.—The first, second, and third errors in the first assignment of error, complain of the action of the court in overruling exceptions to parol evidence offered by appellees to show a conflict of an eleven-league grant with the headright league of land of appellant, and that there was a rumored or reported conflict of an eleven-league grant with said league, and the comparative estimate in which these titles were held as affecting the value of the land bought by appellees.

The gist of appellant's complaint is the inadequacy of the price at which he was induced by fraud of appellees to sell the land about which this controversy has arisen. This fraud is alleged to have been perpetrated, in part at least, by representations made in regard to the conflict of appellant's headright with an eleven-league grant. There is no pretense that appellees represented that they had seen or examined that grant, or had any personal knowledge regarding it; or that they claimed or represented themselves as possessed of more legal skill, greater ability, or better information for determining the relative merits of these titles than appellant. The statements of appellees in reference to the supposed conflict were of a general character, such as usually occur in the negotiation of a bargain when one party is seeking to enhance and the other to diminish the price at which the trade shall be made. That the conflict in fact exists, or is reputed to exist, in the vicinity of the land; and that the supposed merits of the two titles, as affecting the value of the land in general esteem, or with those who might desire to purchase it, is unquestionably relevant to and is admissible in evidence where the question is as to adequacy or inadequacy of the price at which it was sold. The testimony was also legitimate as tending to disprove the fraudulent character of the representations alleged to have been made by appellees in reference to this conflict; nor do we perceive

any valid reason why the existence of such conflict could not be proved by parol testimony. It would not ordinarily appear from an inspection of the grants, but must be shown by proof of their position upon the ground. Though the existence and extent of such conflict can only be definitely determined in many cases by a survey, we know of no reason why it may not be proved by any one who can testify to the fact, and especially where, as here, it is not important to know the precise extent of such conflict, but merely the general fact of its existence, as affecting the value of the property alleged to have been fraudulently purchased at a grossly inadequate price.

The bill of exceptions does not state the grounds of objection to the admission of the testimony assigned as the fourth error. It cannot be seen from a mere inspection of the bill that the testimony was under no circumstances admissible. If in some aspects it was objectionable, or some part of it was inadmissible, had the proper exception been taken, and the attention of the court called to it, we must suppose the correct ruling would have been made. If the testimony objected to had been excluded, appellees would then have had an opportunity of proving any fact which they relied upon in this evidence to establish by other competent testimony.

The fifth and sixth assignments of error ask a reversal for errors in the charge. These errors, if there are any, are not pointed out by either of these assignments; and as there is certainly no error of a controlling character plainly obvious on an inspection of the charge, the court, as it has been often held, is not called upon to make a critical examination to ascertain whether it is in all respects, strictly accurate.

The refusal to give the charges asked by appellant is assigned as the seventh ground of error. Appellant sought by three of these charges to renew his objections in a different shape to the insufficiency and defective character, as he supposes, of the proof of a conflict between his headright

league of land and the eleven-league grant. What has already been said suffices to show that there was no error in the refusal to give these charges. The court could not have given them without overruling its previous decision. The deed which gives rise to this litigation, and appellant's letter, which seems to have been the inception of the negotiation in reference to this part of the land, show, that appellant was informed of the conflict, and regarded it as depreciating the average price at which the land could be sold.

The fourth charge asked by appellant could not have been given, unless it had been shown, which it was not, that the time within which the land in conflict was to be surveyed and paid for, was of the essence of the contract.

The eighth assignment complains of the ruling of the court on the motion for a new trial, and that the verdict of the jury is against the law and evidence. As the motion for new trial presents no specific and distinct error not embraced in the assignments of error, and the evidence is conflicting, this objection to the judgment is evidently not well taken. It is also too general.

Neither of the grounds presented in the second assignment of errors are believed to show any sufficient reason for the reversal of the judgment. No objection was made by appellant to appellees intervening in the suit; and it is now too late for him to object, if he would. It may be, the judgment for appellees amounts to no more than a judgment against appellant on his cross-demand to cancel the deed executed to them. The contract, as regards the thousand acres of land, with which there is no conflict, had been fully consummated. Certainly, as to it, the petition of intervention shows no ground of action against appellant; nor do we see that it shows that appellant was in default, or had violated the contract for the land in conflict. But they were no doubt proper, if not necessary parties to Horton's action; and certainly no one can object, if they choose to do so, that they did for him, by their voluntary appearance, what he

12

should have done. Appellant is not alleged to have ejected appellees from the land, or to have disturbed them in its possession. There is, therefore, nothing in the pleading warranting the judgment ordering the writ of possession; but this, at most, is a mere irregularity, which does appellant no injury and gives him no good ground to ask a reversal of the judgment.

The judgment, in respect to the land in conflict, is certainly indefinite, if not defective. The only matter which was not disposed of when appellant's demand for the cancellation of the contract was refused, was the ascertainment of the quantity of land in conflict with the eleven-league grant, and the payment for it by appellees as proffered in their petition. This, we think, should have been adjusted and disposed of before the case passed from the control of the court. But neither party called the attention of the court to it, nor invoked its action upon it. Nor is the failure of the court to take such action as would have enabled it to have made a proper disposition of this part of the controversy, assigned as error.

The judgment is affirmed.

AFFIRMED.

Chief Justice ROBERTS did not sit in this case.